UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GUY IVESTER, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 1:14-cv-00681-JMS-TAB |
| ) | |
| LAURIE JOHNSON, ) | |
| ) | |
| Respondent. ) | |

**Entry Discussing Petition for a Writ of Habeas Corpus**

Petitioner Guy Ivester pleaded guilty in an Indiana state court of dealing in a schedule II controlled substance. He is currently serving a twenty-year sentence for this crimes. Mr. Ivester now seeks a writ of habeas corpus.

For the reasons explained in this Entry, Mr. Ivester's petition for a writ of habeas corpus is **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

**I.
Background**

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On post-conviction appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> On October 2, 2008, Ivester was charged with three counts of dealing in a schedule II controlled substance, all as Class A felonies, and maintaining a common nuisance, as a Class D felony. The charges stemmed from at least two separate hand-to-hand purchases in July of 2008, in which Detective Aaron Strong of the Henry County Area Drug Task Force, working undercover, purchased oxycodone and other controlled substance pills from Ivester. The State offered various plea agreements to Ivester, who refused all offers, believing that the State, once past discovery deadlines, would not be able to have the relevant lab report admitted at

1

> trial and therefore would not be able to prove its case. Trial was scheduled for September 21, 2009. On the day of trial, the court denied Ivester's motion in limine to exclude the lab report. Following the denial of the motion, and prior to jury voir dire, Ivester entered into a plea agreement with the State. Pursuant to the plea agreement, Ivester pleaded guilty to count II, dealing in a schedule II controlled substance as a Class A felony, and his sentence was to be capped at twenty years.
>
> The trial court held a sentencing hearing in October of 2009. Prior to sentencing, Ivester's counsel orally moved the court to permit Ivester to withdraw his guilty plea, which motion the court denied. The court sentenced Ivester to twenty years imprisonment, with two years suspended to probation.

*Ivester v. State*, 993 N.E.2d 652, 2013 WL 4727536, *1 (Ind. Ct. App. 2013) ("*Ivester II*").

The Indiana Court of Appeals affirmed the denial of post-conviction relief. *See Ivester II*, 2013 WL 4727536, at *7. Mr. Ivester filed a petition to transfer with Indiana Supreme Court on February 4, 2014. The Indiana Supreme Court denied transfer on May 13, 2014. *See Ivester v. State*, 4 N.E.3d 1187 (Ind. 2014). Although the parties initially disputed whether Mr. Ivester timely filed the instant petition for a writ of habeas corpus, they no longer dispute that his petition is timely.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). The petitioner filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). His petition, therefore, is subject to AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

"Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Guys v. Taylor*, 529 U.S.

362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000)). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### III.
### Discussion

Mr. Ivester raises numerous claims in his habeas petition, several of which are difficult to follow. Broadly construed, the Court can discern the following claims: (1) his trial counsel provided ineffective assistance in several respects; (2) his guilty plea was involuntary; (3) the trial court violated his due process rights; and (4) the prosecutor committed misconduct by improperly withholding exculpatory evidence. In addition to contesting the merits of those claims, the respondent contends that Mr. Ivester procedurally defaulted several of them. The Court will first assess whether those claims are procedurally defaulted before addressing the merits of the claims that are not.

**A. Procedural Default**

Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992) "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas

corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis*, 390 F.3d at 1026.

In his petition to transfer to the Indiana Supreme Court, Mr. Ivester purported to raise three claims. These claims are difficult to follow and weave together numerous alleged errors. As far as the Court can discern, Mr. Ivester's three claims can be restated as follows: (1) trial counsel provided ineffective assistance by not compelling the disclosure of an informant utilized by law enforcement and that the failure to discover this witness precluded his attorney from raising an entrapment defense at trial; had this occurred, Mr. Ivester contends he would not have plead guilty, [Filing No. 23-8 at 7-14]; (2) trial counsel provided ineffective assistance of counsel by making an oral motion to withdraw the guilty plea when Indiana law requires such a motion to be in writing and the trial court erred in failing to permit him to withdraw his guilty plea, [Filing No. 23-8 at 14-20]; and (3) his guilty plea was involuntary because it was induced by the trial court's statement that he would not be "penalized" for pleading guilty on the day of trial, which Mr. Ivester understood to mean he would serve no time in prison if he plead guilty, and the trial court did not explain to him otherwise during the plea colloquy, [Filing No. 23-8 at 20-25].

Again, it is difficult to ascertain the precise claims Mr. Ivester asserts in his habeas petition, but he asserts at least a close enough version of the foregoing claims raised in his petition to transfer in his habeas petition such that they are not procedurally defaulted. Mr. Ivester has, however, procedurally defaulted the other claims raised in his habeas petition. *See Lewis*, 390 F.3d at 1026. Accordingly, the Court will turn to the merits of the three claims Mr. Ivester did not procedurally default.

### B.  Ineffective Assistance of Trial Counsel

A defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694). If the petitioner asserts that his counsel was ineffective at the guilty plea stage, the prejudice showing requires a showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

When the deferential AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly"

> so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. 86, 105 (2011).

Mr. Ivester raises two ineffective assistance of trial counsel claims that were not procedurally defaulted. The Court will address each in turn.

### 1. *Disclosure of Confidential Informant*

Mr. Ivester contends that his trial counsel provided ineffective assistance for failing to compel the discovery of a confidential informant involved in purchasing drugs from Mr. Ivester. Had his counsel done so, says Mr. Ivester, he would have not plead guilty because he would have had a viable entrapment defense at trial.

After setting forth the legal standards governing an ineffective assistance of counsel The Indiana Court of Appeals addressed this claim on the merits in *Ivester II*:

> Ivester first argues that his counsel was ineffective for failing to compel discovery, specifically disclosure of the identity of a confidential informant involved in the transactions upon which the charges against him were based. This appears to relate back to several issues that Ivester raised with the post-conviction court below. It seems that the "informant" to whom Ivester refers might be the store clerk who facilitated Detective Strong's meeting with Ivester. The post-conviction court noted that the nature of the underlying transaction—i.e. a hand-to-hand transaction from Ivester to Detective Strong—renders the "proposed observations of any other civilian witness exceedingly insignificant." Post–Conviction Court Findings of Fact and Conclusions of Law at 19. Additionally, Ivester was aware at the time he pleaded guilty that the identity of any "informant" had not been disclosed. As for Ivester's claim that the informant could have established entrapment as a viable defense, the post-conviction court noted that a number of specific facts in Ivester's case negated the possibility of entrapment as a defense, namely that there were multiple transactions, agreements as to price, and that one transaction occurred in Ivester's home. Ivester has not shown that, but for counsel's actions, he would not have pleaded guilty. We see no clear error on the part of the post-conviction court.

*Ivester II*, 2013 WL 4727536, at *3.

As an initial matter, despite the recognized confusion as to the identity of the informant to which Mr. Ivester refers, he still has not clarified the identity of the informant or explained in any specific terms how this informant would have provided the basis for a viable entrapment defense. Nevertheless, the Indiana Court of Appeals reasonably concluded that Mr. Ivester was not prejudiced by any lack of knowledge regarding the informant, chiefly because the underlying crime was a hand-to-hand drug transaction between Detective Strong and Mr. Ivester. As the Indiana Court of Appeals reasoned, this makes any additional witness to that transaction of very little value to Mr. Ivester in disputing the charge.

Moreover, the Indiana Court of Appeals reasonably concluded that Mr. Ivester's proposed entrapment defense would not have been viable such that he would not have plead guilty. Under Indiana law, "[t]here is no entrapment if the State shows either (1) there was no police inducement, or (2) the defendant was predisposed to commit the crime." *Griesemer v. State*, 26 N.E.3d 606, 609 (Ind. 2015). In drug cases, evidence that the defendant engaged in "multiple transactions" and a familiarity with "drug . . . prices" are sufficient to prove predisposition. *Riley v. State*, 711 N.E.2d 489, 494 (Ind. 1999). The Indiana Court of Appeals relied on this exact type of evidence—specifically, that there were multiple transactions, agreements as to price, and that one transaction occurred in Ivester's home—in concluding that Mr. Ivester did not have a viable entrapment defense and thus was not prejudiced by his counsel's failure to identify the informant who could allegedly support an entrapment defense. This was not an unreasonably application of *Strickland*'s prejudice prong, and thus Mr. Ivester is not entitled to relief on this claim.[1]

---

[1] Again, both this Court and the Indiana Court of Appeals noted the particular difficulty in following Mr. Ivester's claims. To the extent that Mr. Ivester was attempting to raise a stand-alone *Brady* claim—and assuming that this claim was fairly presented to the Indiana Court of Appeals and Indiana Supreme Court—the Indiana Court of Appeals prejudice analysis would be the same and Mr. Ivester would not be entitled to relief. Whether viewed through the lens of *Strickland* or

2. *Motion to Withdraw the Guilty Plea*

Mr. Ivester contends that his trial counsel provided ineffective assistance in handling his motion to withdraw his guilty plea. The Indiana Court of Appeals addressed this claim on the merits in *Ivester II*:

> Finally, Ivester argues that Hovanec was ineffective in failing to file a written motion to withdraw the guilty plea. It is true that after entry of a guilty plea but before sentencing, a motion to withdraw must be made in writing. Ind.Code § 35–35–1–4(b). However, we need not reach whether this constituted deficient performance, because we agree with the post-conviction court that Ivester was not prejudiced by any failure on Hovanec's part. Following Hovanec's oral motion to withdraw Ivester's plea, the trial court noted several reasons that it would have denied the motion to withdraw even if it had been properly presented in written form. Namely, that Ivester had appeared in court and provided a factual basis under oath; that the court had reviewed Ivester's rights and the implications of the plea with him and that he understood the rights he was waiving; that the State would have been substantially prejudiced by a withdrawal of the plea at that point; and that Ivester presented no evidence indicating that his withdrawal was necessary to prevent a manifest injustice.

*Ivester II*, 2013 WL 4727536, at *4.

Mr. Ivester maintains he was prejudiced by his trial counsel's failure to properly act upon his desire to withdraw his guilty. Mr. Ivester wrote a letter to the trial court not long after he plead guilty, seeking to withdraw his guilty plea. The letter stated that he was "confused about [his] constitutional rights," was unaware that he could not appeal, and misunderstood the sentence he "could receive." PCR App. at 493. The trial court forwarded that letter to Mr. Ivester's trial counsel Mr. Hovanec who, on the date of sentencing, orally moved to withdraw Mr. Ivester's guilty plea.

---

*Brady*, what is clear is that Mr. Ivester believes the informant would have allowed him to pursue a viable entrapment defense at trial and thus he would not have plead guilty. But, as explained herein, the Indiana Court of Appeals conclusion to the contrary was a reasonable assessment of prejudice.

8

As noted by the Indiana Court of Appeals in *Ivester II*, the trial court noted several reasons why the motion to withdraw should be denied. This included that proper procedure for withdrawing a guilty plea was not followed. However, the trial court also noted that after receiving Mr. Ivester's letter it independently "reviewed the transcript and the plea agreement." *Id.* at 445. This review revealed to the trial court that at the original plea hearing Mr. Ivester was advised that he was giving up a variety of constitutional rights by pleading guilty and of the potential penalties he faced. *See id.* The trial court also noted that Mr. Ivester provided a factual basis for his plea. *See id.* For all of these reasons, the trial court determined that Mr. Ivester would not be allowed to withdraw his guilty plea.

Mr. Hovanec acknowledged that he made a mistake in failing to properly file a motion to withdraw his client's guilty plea, and he expressed concern that this was the reason his client was not permitted to withdraw it. But the trial court responded that this failure was only "one of many things, which would have been the basis for the Court denying the motion to withdraw the plea." *Id.* at 446. Again, the trial court reiterated to Mr. Hovanec that "the Court's rulings [regarding the withdraw of the guilty plea] would . . . stand for all the other reasons that the Court set forward." *Id.* at 447.

The Indiana Court of Appeals in *Ivester II* relied on the foregoing facts in holding that Mr. Ivester was not prejudiced by any deficient performance by his counsel in relation to the withdraw of his guilty plea. The trial court made clear that, even though Mr. Ivester felt he was unaware of his constitutional rights and the sentence he would face by pleading guilty, he was informed otherwise at his guilty plea hearing and thus would not be permitted to withdraw his guilty plea even if his counsel had properly filed a written motion to withdraw. The Indiana Court of Appeals reasonably applied *Strickland*'s prejudice prong in concluding that these facts demonstrated that

Mr. Ivester was not prejudiced by any deficient performance on his counsel's part related to the withdraw of his guilty plea.

Accordingly, Mr. Ivester is not entitled to habeas relief on either of ineffective assistance of counsel claims.

### C. Involuntary Guilty Plea

Mr. Ivester contends that his guilty plea was involuntary and thus unconstitutional. "[T]he Constitution prohibits a court from accepting a criminal[] defendant's guilty plea 'without an affirmative showing that it was intelligent and voluntary.'" *Dansberry v. Pfister*, 801 F.3d 863, 864 (7th Cir. 2015) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). This requires the defendant to "be fully aware of the direct consequences of his plea, including the permissible range of sentences." *Id.* (citation and quotation marks omitted).

Mr. Ivester explained at the post-conviction hearing that he believed his plea was involuntary. Specifically, he testified that he would not have plead guilty had he be given the appropriate discovery (a state crime lab report) and had he not been misled by the trial court's statement that he would not be "penalized," which Mr. Ivester understood to mean he would not be sentenced to prison. *See* PCR Tr. at 235-38. The post-conviction court rejected Mr. Ivester's contentions that his plea was involuntary based on either ground.

The Indiana Court of Appeals affirmed the post-conviction court, reasoning as follows:

> As discussed above, Ivester misunderstands the trial judge's statement about not penalizing him. The statement did not indicate that the court would suspend Ivester's entire sentence, but rather indicated the reason why the court was allowing a plea to be entered so late in the process. Additionally, there is evidence to support the postconviction court's determination that Ivester was advised as to the potential sentence under his plea agreement and that he stated under oath his comprehension of the possible sentence. The post-conviction court also noted that Ivester testified at the post-conviction relief hearing, and that at no point did he state that he believed he would get to go home and not be sent to prison as a result of the plea agreement. Rather, he stated that he believed he deserved a second chance. We conclude that

> Ivester was aware of the actual sentencing possibilities, and any more accurate information would not have made a difference in his decision to accept the plea.
>
> As for the State's late discovery, discovery is not generally relevant to voluntariness—while it may go to the strength of the State's case, it does not go to whether Ivester's plea was voluntary. Nonetheless, Hovanec testified that he had discussed with Ivester the likelihood that the report would be given late, and that the court would nonetheless allow it to be entered into evidence. Hovanec also testified that he was fully prepared for trial, and the post-conviction court found Hovanec to be credible. There is evidence to support the post-conviction court's determination that Ivester's plea was voluntary.

*Ivester II*, 2013 WL 4727536, at *5.

The foregoing reveals that the Indiana Court of Appeals addressed Mr. Ivester's claim on the merits, and it rejected the arguments he raised as to why his plea was involuntary. Mr. Ivester raises those same challenges here, but the Indiana Court of Appeals rejection of those claims represents a reasonable application of the facts to the governing legal principles.

First, the Indiana Court of Appeals' assessment that the trial court's comment about not penalizing Mr. Ivester is not only reasonable but the most persuasive interpretation of that statement when read in context. *See* PCR App. at 428 (following a discussion regarding the failure of the parties to have the state police lab report yet, the trial court stated that it "won't penalize [the defendant] for pleading guilty today if he wants to do that. That's still an option. I am not going to tax him for not having the state police lab until the last minute"). Moreover, although Mr. Ivester testified during post-conviction proceedings that he did not commit the crime and would not have plead guilty but for the trial court's statement that he would not be "penalized," *see* PCR Tr. at 235-38, he nonetheless provided a factual basis for his plea during the plea colloquy, *see* PCR App. at 436. These contradictory statements about his guilt undermine Mr. Ivester's credibility and provided a sound basis for the post-conviction court to conclude that, despite the

"penalized" comment, he was "aware of the actual sentencing possibilities." *Ivester II*, 2013 WL 4727536, at *5.

Perhaps more importantly, for reasons similar to those discussed above regarding Mr. Ivester's failed attempt to withdraw his guilty plea, any argument that he did not understand that he could be sentenced to a period of incarceration is contradicted by the plain terms of the plea agreement he signed and the plea colloquy with the trial court. *See* PCR App. at 509-10 (plea agreement explaining that the defendant's maximum sentence will be twenty years and that "[t]he Court shall be free to impose any sentence within the full range of possibilities available under Indiana law up to the State's agreed 'cap'"); *id* at 430 (trial court explaining the possible sentences to Mr. Ivester during the plea colloquy and Mr. Ivester's recognition that he understands the possible sentences). As noted by the Indiana Court of Appeals, "[Mr.] Ivester was advised as to the potential sentence under his plea agreement and that he stated under oath his comprehension of the possible sentence." *Ivester II*, 2013 WL 4727536, at *5. At the end of the plea colloquy, Mr. Ivester answered "no" when asked if he was promised anything the trial court did not cover. PCR App. at 432.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Mr. Ivester's post hoc argument regarding whether or not he would be "penalized" if he plead guilty was reasonably rejected by the Indiana Court of Appeals and thus is insufficient to overcome this presumption. Accordingly, the Indiana Court of Appeals was correct to rely on Mr. Ivester's statements regarding the possible punishment as presumptively

true, and on this basis it was reasonable to conclude that Mr. Ivester was aware of the consequences of his plea.[2]

Second, the Indiana Court of Appeals reasonably concluded that Mr. Ivester's lack of the state crime lab did not make his plea—for which he provided a factual basis—involuntary. *See United States v. Graf*, --- F.3d ----, 2016 WL 3513460, *4 (7th Cir. 2016) ("A plea can be perfectly voluntary in the face of incomplete information." (citation and quotation marks omitted)).

Accordingly, Mr. Ivester is not entitled to habeas relief on this claim.[3]

## IV.
## Conclusion

This court has carefully reviewed the state record in light of Mr. Ivester's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. Because Mr. Ivester failed to carry his burden on his claims, he is not entitled to habeas relief, and his petition is therefore **denied**. Mr. Ivester's motions for decision [dkts. 37, 41] and motion for conditional release [dkt. 42] are **denied as moot**.

---

[2] The Court notes that the Indiana Court of Appeals credited the post-conviction court's statement that "Ivester testified at the post-conviction relief hearing, and . . . at no point did he state that he believed he would get to go home and not be sent to prison as a result of the plea agreement." *Ivester II*, 2013 WL 4727536, at *5. This is simply incorrect, as Mr. Ivester directly testified that "I would have never pled guilty . . . because I thought I was going home."  PCR Tr. at 235-38. Nevertheless, the Indiana Court of Appeals' reliance on the plea agreement and plea colloquy alone provide a reasonable basis to reject the petitioner's claim, so this mistake ultimately does not affect the outcome.

[3] To the extent that Mr. Ivester contends that the trial court impermissibly injected itself into the plea negotiations in violation of Federal Rule of Criminal Procedure 11, such a claim does not present a viable basis for habeas relief because "there is no clearly established federal law, as determined by the Supreme Court of the United States, prohibiting a state court's participation in plea negotiations." *Bivens v. Poole*, 302 Fed. Apx. 598, 598 (9th Cir. 2008); *see Stewart v. Peters*, 958 F.2d 1379, 1384 (7th Cir. 1992) ("The Constitution does not enact Rule 11 of the Federal rules of Criminal Procedure."); *Miles v. Dorsey*, 61 F.3d 1459, 1467 (10th Cir. 1995) ("[Rule 11] is not necessarily a constitutional inhibition [on judicial participation in plea discussions] and the rule itself has no effect on state judges." (citation and quotation marks omitted)).

13

Judgment consistent with this Entry shall now issue.

## V.
## Certificate of Appealability

Rule 11(a) of the *Rules Governing § 2254 Cases* requires the district courts to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and "[i]f the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Pursuant to § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Such a showing includes demonstrating "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and quotation marks omitted). Mr. Ivester has failed to make this showing, and therefore a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

Date: __July 1, 2016_____

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

GUY JUNIOR IVESTER
205136
INDIANAPOLIS RE-ENTRY EDUCATIONAL FACILITY
401 North Randolph Street
Indianapolis, IN 46201

Electronically Registered Counsel